UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Bachan Dilip Ragoonanan, | Civil No. 07-3461 (PAM/JSM) |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| United States Citizenship and Immigration Services, | |
| Defendant. | |

This matter is before the Court on cross-Motions for Summary Judgment. For the reasons that follow, the Court denies Defendant's Motion and grants Plaintiff's Motion.

**BACKGROUND**

On October 5, 2006, Defendant United States Citizenship and Immigration Services ("CIS") denied Petitioner Bachan Dilip Ragoonanan's ("Ragoonanan") Application for Naturalization (form N-400). CIS determined that Ragoonanan failed to establish that he "has been and still is a person of good moral character" within five years of his application as required for naturalization. See 8 U.S.C. § 1427(a)(3). After CIS denied Ragoonanan's request for a hearing, see 8 U.S.C. § 1447(a), Ragoonanan sought de novo review in this Court pursuant to 8 U.S.C. § 1421(c).

In support of their cross-Motions for Summary Judgment, the parties submitted the CIS administrative record as well as various other materials outside the pleadings. The Court has reviewed the record as a whole and makes the following findings of fact and conclusions of law.

**DISCUSSION**

**A.     Findings of Fact**

Ragoonanan, 43, is a Trinidad citizen who became a United States lawful permanent resident in 1996. His wife lives in Trinidad. They have one child, a United States citizen, who lives with her mother.

Ragoonanan has worked for Honeywell International Inc. since September 14, 1998. Presently he is a production worker in Honeywell's automation and control solutions business group in Golden Valley, Minnesota. Ragoonanan has what his employer describes as a "clean employment record." (Administrative Record ("A.R.") at 31.) He has been a Teamster in good standing since November 1998, owns rental property, has filed state and local tax returns, and has been a member of the Minneapolis Cricket Association since arriving in Minnesota in 1996. In addition, in 2005 he cared for his ill mother.

On January 31, 2005, a police officer arrested Ragoonanan for driving while impaired ("DWI") after observing him operate a motor vehicle the wrong way on Cedar Avenue near 150th Street in Apple Valley, Minnesota. The officer administered a breath test at the scene, which indicated that Ragoonanan's blood-alcohol concentration was 0.18 percent, more than double what Minnesota law allows for motor vehicle operation. Minn. Stat. § 169A.20, subd. 1(5). Ragoonanan was charged with fourth-degree misdemeanor DWI, see Minn. Stat.§ 169A.27, and was jailed for one night.

Ragoonanan voluntarily underwent a substance-abuse inventory that categorized him as having "abusive episodic" tendencies and a "low probability of having a Substance Dependence Disorder." He also completed a six-hour Alcohol, Drug and DWI Awareness

course. On March 25, 2005, Rangoonanan pled guilty to fourth-degree DWI in Dakota County District Court. His 90-day sentence and $1,000 fine were stayed in lieu of a $300 fine, a $65 surcharge, one year of probation, and the requirement that he attend a victim impact panel. The record establishes that Ragoonanan fulfilled all financial and probationary requirements. (A.R. at 57.)

On April 20, 2006, Rangoonanan filed his N-400 naturalization application and disclosed his DWI conviction. (A.R. at 50.) He subsequently attributed his drinking-and-driving behavior to stress associated with his mother's illness and his separation from his wife and daughter. When CIS denied Ragoonanan's application on October 5, 2006, District Director Denise M. Frazier cited circumstances of his DWI conviction:

> Your conduct during the statutory period, and the fact you were on probation during that period for such conduct, preclude you at this time from establishing that you have the required good moral character to become a United States citizen. Additionally, the Service cannot ignore the fact that by drinking and driving, you posed a threat to the property, safety, and welfare of others.
>
> Accordingly, your Form N-400 must be, and hereby is, denied.
>
> This decision is made without prejudice toward filing a new Form N-400 in the future.
>
> If you desire to request a review hearing on this decision pursuant to Section 336(a) of the [Immigration and Nationality] Act, you must file a request for a hearing within 30 days of the date of this notice. . . .

(A.R. at 27-28.)

Within 30 days, on November 3, 2006, Rangoonanan through counsel requested a hearing and asserted that the denial was not based on any meaningful investigation:

> Had the [CIS] officer questioned Mr. Ragoonanan about his DUI, he or she would have understood his despondent state given his mother's illness and death, his immigration-related separation from his wife who remains in Trinidad and the fact that he has never had any other problem, violation, arrest ever, since he entered the U.S. He is a hard worker and owns rental property which he maintains himself.

(A.R. at 24.)

On April 12, 2007, Frazier wrote Ragoonanan a letter denying both his request for a hearing and for reconsideration. She stated that "[t]he Service acknowledges the struggles that you have claimed," but that "the Service cannot ignore the fact that your behavior on January 31, 2005, resulting in a criminal charge, as discussed heretofore, posed a significant threat to the safety and welfare of others and that sufficient time has not elapsed to make a determination as to whether your character has reformed." (A.R. at 11.)

**B. Conclusions of Law**

    **1. Summary Judgment Standard**

Summary judgment is proper when the evidence viewed in a light most favorable to the nonmoving party demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, only disputes of facts that might affect the outcome of the suit under the governing substantive law will preclude summary judgment. Id. The moving party bears the burden of showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to all inferences that

may be reasonably drawn from the underlying facts in the record.  Meriwether v. Caraustar Packaging Co., 326 F.3d 990, 992-93 (8th Cir. 2003).  The nonmoving party may not merely rest upon allegations or denials in its pleadings—it must set forth specific facts showing that there is a genuine issue for trial.  Anderson, 477 U.S. at 256.

### 2. CIS's Motion for Summary Judgment

As an applicant for naturalization, Ragoonanan bears the burden of establishing that he "has been and still is a person of good moral character" for the five years preceding his application.  8 U.S.C. § 1427(a)(3); 8 C.F.R. § 316.2(a)(7).  Determinations are made "on a case-by-case basis." 8 C.F.R. §316.10(a)(2).  On CIS's Motion for Summary Judgment, the Court must view evidence in the light most favorable to Ragoonanan.  Accordingly, to grant CIS's Motion, the Court must conclude that Ragoonanan's DWI conviction operates as a statutory or regulatory bar to him establishing that he is a person of good moral character.

Congress has enacted several such statutory bars.  See 8 U.S.C. § 1101(f).  CIS has promulgated a similar and substantially longer list.  See 8 C.F.R. § 316.10(b).  Both lists specify that a person who is or was "a habitual drunkard" lacks good moral character.  8 U.S.C. § 1101(f)(1); 8 C.F.R. § 316.10(b)(2)(xii).  The lists also specify that an applicant with a single conviction for murder, an aggravated felony, or a crime of "moral turpitude" is barred from establishing good moral character, but that otherwise convictions for "two or more offenses" generally are required.  8 U.S.C. § 1101(f)(3) (citing 8 U.S.C. § 1182(a)(2)(A)-(B)); 8 C.F.R. § 316.10(b)(2).  Further, "a single offense for simple possession of 30 grams or less" of marijuana standing alone does not preclude an applicant

5

from proving good moral character. 8 U.S.C. § 1101(f)(3); 8 C.F.R. § 316.10(b)(2)(iii).

CIS does not contend that Ragoonanan is a habitual drunkard or was guilty of a crime of moral turpitude. Rather, CIS asserts that the lists of enumerated traits referenced above are not exhaustive, and that Rangoonanan's behavior fits within a CIS regulatory "catch-all" provision for assessing a naturalization applicant's criminal activity:

> Unless the applicant establishes extenuating circumstances, the applicant shall be found to lack good moral character if, during the statutory period, the applicant . . . [c]ommitted unlawful acts that adversely reflect upon the applicant's moral character, or was convicted or imprisoned for such acts, although the acts do not fall within the purview of [the enumerated traits].

8 C.F.R. § 316.10(b)(3)(iii). CIS further argues that because Ragoonanan was on probation when he applied for naturalization, CIS properly denied his application pursuant to 8 C.F.R. § 316.10(c)(1) ("application will not be approved until after the probation, parole, or suspended sentence has been completed"). Finally, CIS cites statistics showing that drunken driving is a grave public ill (see Millenacker Decl. Exhs. A-B), and suggested at oral argument that it is appropriate to "send a message" to naturalization applicants that drunken driving is inappropriate.

The Court wholeheartedly agrees that no one, naturalization applicant or otherwise, should drive a car while under alcohol's influence. The Court further recognizes that Ragoonanan's choice to drink and drive on January 31, 2005, adversely reflects on his moral character. However, the Court finds no authority for CIS's position that a single DWI conviction that results in one year of probation operates as a statutory or regulatory bar to proving good moral character.

First, because Ragoonanan was sentenced on March 28, 2005, and filed his application on April 20, 2006, the record does not support CIS's assertion that Ragoonanan was on probation when he applied. (See A.R. at 52, 60.) Even if the circumstances were as CIS describes, the regulations do not direct that naturalization must be denied when a candidate applies while on probation, but rather direct that the "application will not be approved" until probation is completed. 8 C.F.R. § 316.10(c)(1) (emphasis added).

Second, the regulations and statutes establish a general rule that unless an applicant has been convicted of murder, an aggravated felony, or a crime of moral turpitude, the statutory or regulatory bar arises only where an applicant has two or more convictions. If Congress intended for a single DWI conviction to bar a lawful permanent resident from becoming a United States citizen, it would have said so, just as it specified that a single conviction for simple marijuana possession cannot by itself bar an applicant from establishing good moral character. See 8 U.S.C. § 1101(f)(3).

Third, the regulations direct that when CIS examines an applicant's criminal behavior under the 8 C.F.R. § 316.10(b)(3)(iii) "catch-all" regulation, the applicant is entitled to establish "extenuating circumstances." Ragoonanan received no meaningful opportunity to do so.

Finally, CIS's supporting case law actually works in Ragoonanan's favor because the cases demonstrate that a single DWI conviction, standing alone, does not statutorily bar a naturalization applicant from establishing good moral character when he has been candid about the conviction. See Rico v. INS, 262 F. Supp. 2d 6, 10 (E.D.N.Y. 2003) (denying

naturalization application where DWI conviction in five-year statutory period was "one of a series of five DWI convictions spanning a ten year period"); Puciaty v. Dep't Justice, 125 F. Supp. 2d 1035, 1039-40 (D. Haw. 2000) (granting application where applicant had two drunken driving pleas and unpaid civil judgment); see also Le v. Elwood, No. 02-CV-3368, 2003 WL 21250632, at *2 (E.D. Pa. March 24, 2003) (denying application where applicant failed to disclose two DWI convictions). Accordingly, CIS's Motion for Summary Judgment must be denied.

### 3. Ragoonanan's Motion for Summary Judgment

For the Court to grant Ragoonanan's Motion for Summary Judgment, it must conclude that the record as a whole establishes that he is a person of good moral character. See, e.g., Puciaty, 125 F. Supp. 2d at 1040 (granting plaintiff's summary judgment motion). Relevant criteria include applicable statutes and regulations, as well as "the standards of the average citizen in the community of [Ragoonanan's] residence." 8 C.F.R. § 316.10(a)(2).

The record confirms that Ragoonanan's DWI conviction was, as he says, the "one exception" to his otherwise law-abiding life in this country. Ragoonanan has established that he took his serious crime seriously by disclosing the conviction on his naturalization application, consistently taking responsibility for his actions, and completing a chemical-abuse assessment before pleading guilty. The conviction was, by all accounts, a necessary wake-up call for Ragoonanan that, thankfully, caused no death or bodily harm.

CIS contends that because Ragoonanan cited familial stress as a reason why he drove drunk, he is seeking to "explain away" his conduct. (Reply Mem. at 8.) However, when a

naturalization applicant's criminal behavior is subjected to the "catch-all" provision in 8 C.F.R. § 316.10(b)(3)(iii), the regulation <u>requires</u> him to try to explain his conduct by offering "extenuating circumstances."

CIS suggests that Ragoonanan lacks good moral character because he was arrested while "driving drunk down a street the wrong way" (Reply Mem. at 1)—behavior that CIS asserts the community would find abhorrent. The record reflects that Ragoonanan pled guilty to "[t]urn[ing] into southbound lane traveling north on Cedar Ave." (A.R. at 66.) This does not appear to be a situation where the community would be rightfully outraged by a motorist inexplicably driving the wrong way for many blocks.

Ragoonanan has conclusively established that he is a good employee who pays his taxes, is committed to but also misses his family, owns property, and became involved in his community as soon as he arrived in Minnesota. The Court finds his forthrightness refreshing, and his willingness to take responsibility for his single crime commendable. By all accounts, Ragoonanan is precisely the sort of person whom the United States should be, and will be, eager to welcome as a citizen. Accordingly, the Court grants Ragoonanan's Motion for Summary Judgment and orders that his naturalization application be granted.

**CONCLUSION**

The Court finds no authority indicating that a single DWI conviction resulting in probation operates as a statutory or regulatory bar to a naturalization applicant who seeks to establish "good moral character." In this case, Ragoonanan has established that he is of good moral character, and that his naturalization application should be granted. Accordingly, **IT**

9

**IS HEREBY ORDERED** that:

1. The United States Citizenship and Immigration Services' Motion to Dismiss or in the alternative for Summary Judgment (Docket No. 4) is **DENIED**;

2. Petitioner's Bachan Dilip Ragoonanan's Motion for Summary Judgment (Docket No. 11) is **GRANTED**; and

3. Ragoonanan's Application for Naturalization shall be **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   December 17, 2007

                                                  s/Paul A. Magnuson
                                                  Paul A. Magnuson
                                                  United States District Court Judge